**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION**

| | | |
|---|---|---|
| TRACY PATTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 4:02-CV-47-DSH-WGH |
| | ) | |
| NOVARTIS CONSUMER HEALTH, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT NOVARTIS CONSUMER HEALTH, INC.'S MOTIONS: (1) FOR DISCOVERY RELATED TO PLAINTIFF'S RULE 26(A)(1) DISCLOSURES; AND (2) TO COMPEL PLAINTIFF TO SIGN AUTHORIZATION ALLOWING INFORMAL PRIVATE INTERVIEWS WITH HER HEALTHCARE PROVIDERS**

Novartis Consumer Health, Inc. ("NCH") respectfully submits this memorandum in support of its Motions (1) for Discovery Related to Plaintiff's Rule 26(a)(1) Disclosures; and (2) to Compel Plaintiff to Sign Authorization Allowing Informal Private Interviews with her Healthcare Providers.

**I.   NCH Should Be Permitted to Depose the Fact Witnesses Identified in Plaintiff's Rule 26(a)(1) Disclosures**

On August 27, 2004, Plaintiff disclosed potential fact witnesses pursuant to Rule 26(a)(1) and the Magistrate Judge's Order on Status Conference entered August 10, 2004. In her disclosures, Plaintiff identified six fact witnesses who had not been disclosed on Plaintiff's Fact Sheet, which was required in the United States District Court for the Western District of Washington at Seattle, MDL Docket No. 1407 ("MDL"), or otherwise timely disclosed during the period allotted for MDL fact discovery. Having disclosed these witnesses as required by this Court's order, Plaintiff now seeks to prevent NCH from deposing them.

Because fact discovery was closed by MDL order prior to Plaintiff's late disclosures, NCH could not depose these witnesses without the cooperation of Plaintiff. On Thursday, September 16, 2004, NCH first requested dates to depose the two newly-disclosed witnesses that did not appear to be treaters. *See* email from Ms. Zweig, counsel for NCH, to Ms. Bliss, counsel for Plaintiff, September 16, 2004, attached as Exhibit A. Plaintiff inexplicably refused to make the newly-disclosed witnesses available for deposition unless NCH granted her request for additional time to submit her Rule 26(a)(2) expert disclosures, as well as other concessions. *See* Letter from Ms. Bliss, counsel for Plaintiff, to Ms. Zweig, counsel for NCH, September 20, 2004, attached as Exhibit B. When NCH thereafter attempted to address its right to depose fact witnesses separately, on its own merits, Plaintiff refused. *See* Letter from Ms. Bliss, counsel for Plaintiff, to Ms. Zweig, counsel for NCH, October 5, 2004, attached as Exhibit C. NCH tried once more to resolve this issue on October 12, 2004. *See* letter from Ms. Vanek, counsel for NCH, to Ms. Bliss, counsel for Plaintiff, October 12, 2004, attached as Exhibit D. Plaintiff again refused to agree to the depositions. *See* Letter from Ms. Bliss, counsel for Plaintiff, to Ms. Vanek, counsel for NCH, October 13, 2004, attached as Exhibit E.

The six witnesses identified in Plaintiff's Rule 26(a)(1) disclosure are (1) Hisham Alrefai, MD, endocrinologist; (2) David Bybee, MD, endocrinologist; (3) Deana Menikoff, PA-C, rehab/assistant to Karen Bloom; (4) David Winslow, MD, sleep specialist; (5) Pam Lyle, friend and roommate; and (6) Rev. Dee Dale, Senior Pastor, Metropolitan Community Church.

Dr. Winslow, Ms. Menikoff, Ms. Lyle and Rev. Dale are entirely new to this case. Indeed, though sleep disturbances have been associated with a risk of stroke, *see, e.g.,* Vahid Mahsenin, MD, *Sleep-Disordered Breathing: Implications in Cerebrovascular Disease*, 6 Preventive Cardiology 149 (2003), it was only upon receipt of Plaintiff's Rule 26(a)(1) disclosures that NCH became aware that Plaintiff was even seeing a sleep specialist. The

rehabilitation assistant undoubtedly has discoverable information about Plaintiff's claimed substantial residual injuries. NCH also should be permitted to take the depositions of Plaintiff's roommate and pastor, to the extent that Plaintiff may offer them as witnesses at trial. Plaintiff offers no valid justification for refusing to allow NCH to depose witnesses never before disclosed in this litigation.

As to Dr. Alrefai and Dr. Bybee, by the time NCH received related records from Plaintiff's counsel on September 5, 2003 and March 3, 2004, respectively, NCH was unable to depose either endocrinologist. Plaintiff was allowed under the applicable MDL CMO to limit the number of depositions NCH was permitted to take, and NCH had completed those depositions by August 8, 2003, without ever knowing there were endocrine issues in the case.[1] NCH has never been permitted to speak with Plaintiff's specialists -- or any of her treaters -- regarding her endocrine issues.

Plaintiff should not be permitted to surprise NCH with testimony from these witnesses. Plaintiff's refusal to allow NCH to depose these witnesses is entirely inconsistent with this Court's order requiring their disclosure. Obviously, there is little point in Plaintiff's naming the witnesses if NCH is not allowed to then depose them. NCH therefore requests that the Court permit NCH to depose the fact witnesses identified in Plaintiff's Rule 26(a)(1) Disclosures, or, in the alternative, that the Court preclude Plaintiff from introducing any evidence from these witnesses in pre-trial proceedings or at trial.

## II. NCH Should Be Permitted to Conduct Informal Interviews With Plaintiff's Healthcare Providers

The testimony of Plaintiff's healthcare providers will likely play an important role at trial of Plaintiff's claims that NCH's product Tavist-D allegedly caused her injuries. In order to

---

[1] Plaintiff first visited Dr. Alrefai on July 1, 2003, and she first visited Dr. Bybee on December 11, 2003.

effectively prepare for trial, NCH needs to informally meet and interview these potential witnesses. *See Shots v. CSX Transp., Inc.*, 887 F. Supp. 206, 208 (S.D. Ind. 1995) (Hussman, M.J.) (holding that, under federal law, the trial court may permit *ex parte* conferences with treating physicians).

NCH asked for Plaintiff's consent to informal, private interviews with her physicians. *See* letter from Ms. Vanek, counsel for NCH, to Ms. Bliss, counsel for Plaintiff, October 12, 2004, attached as Exhibit D. Plaintiff refused, claiming, *inter alia*, that her counsel have not met with her medical providers to turn them into expert witnesses. *See* Letter from Ms. Bliss, counsel for Plaintiff, to Ms. Vanek, counsel for NCH, October 14, 2004, attached as Exhibit F. Plaintiff's explanation for her refusal is neither responsive to the basis for NCH's request nor accurate. First, Plaintiff refused to permit NCH to depose one of Plaintiff's treaters, Dr. Kraft, and has even failed to make available Dr. Kraft's treatment records, on the grounds that he may be offered as an expert for Plaintiff. Second, NCH's right to effective trial preparation is not dependent on Plaintiff's own tactical plays.

NCH's request for *ex parte* contacts with Plaintiff's treaters is a procedural matter governed by the Federal Rules of Civil Procedure, which do not prohibit the informal contacts requested by NCH. Plaintiff waived any existing privilege by placing her medical conditions in controversy. In addition, courts in this jurisdiction and in others have permitted such contacts in similar cases. These private contacts also are permissible under the Health Insurance Portability and Accountability Act ("HIPAA"), 45 C.F.R §§160 & 164 (2003). Finally, NCH's constitutional due process rights require a level playing field with respect to access to these important witnesses.

### A.  Informal Private Interviews are Permitted Under the Federal Rules of Civil Procedure

In a diversity case such as this one, state privilege law governs only whether the physician-patient privilege has been waived by the filing of a lawsuit putting the plaintiff's health in issue. Once this determination is made, federal rather than state law controls the procedural aspects of conducting pretrial proceedings. *See Shots*, 887 F. Supp. at 207; *Everhart v. National Passenger R.R. Corp.*, No. IP 01-1221-C-H/K, 2003 WL 83569 *1 (S.D. Ind. Jan. 9, 2003).

By placing her medical conditions in controversy in this case, Plaintiff waived any privilege under Indiana law with respect to her healthcare providers. *See Canfield v. Sandock*, 563 N.E.2d 526, 529 (Ind. 1990) (finding that when Plaintiff placed her mental or physical condition in issue, she performed an act which is so incompatible with an invocation of the physician-patient privilege as to that condition that she implicitly waived privilege to that extent); *Owen v. Owen*, 563 N.E.2d 605, 608 (Ind. 1990) (holding that once the privilege is waived, "information which would otherwise be protected from disclosure by the privilege then becomes subject to discovery"). Plaintiff thereby placed herself under federal procedural rules, which, unlike Indiana state rules,[2] do not prohibit *ex parte* communications.

In *Shots*, this Court expressly held that a defendant is entitled to private conferences *ex parte* with a plaintiff's treating physicians. 887 F. Supp. 206. As explained by the Court:

> Our review of the Federal Rules of Civil Procedure does not disclose any rule which specifically addresses the issue of *ex parte* communications in the discovery process. Under the federal rules, [however], district court judges are given wide discretion to supervise the discovery process ….
> … We believe [the FRCP] leave to the district court the discretion whether to allow *ex parte* conferences. Where the plaintiff does not suggest that any other

---

[2] In *Cua v. Morrison*, 626 N.E.2d 581 (Ind. 1993), the Indiana Supreme Court upheld an appellate court's decision barring *ex parte* communications between defense counsel and plaintiffs' treating physicians as a means of discovery in that case. The *Cua* ruling does not apply in federal court. *Cf Shots*, 887 F. Supp. at 207 ("*Cua* governs Indiana discovery procedure, but does not change the essential elements of the physician-patient privilege"); *Eve v. Sandoz Pharm. Corp.*, No. IP98-1429-C-Y/S, 2002 WL 32153352 (S.D. Ind. May 16, 2002) (*Cua* stands for proposition that a request is not about what the defendant may discover, but how the defendant may discover it).

> medical condition exists which merits protection from disclosure, the policy considerations which protect the physician-patient relationship can safely be subverted to those policy considerations which expedite the discovery process.

877 F. Supp. at 207. The Court therefore granted defendants' motion to compel authorization for *ex parte* interviews. *Id.* at 208.

The Southern District of Indiana has continued to follow this reasoning. *See Everhart*, 2003 WL 83569 *2 (granting motion to compel plaintiff to sign authorization forms permitting *ex parte* contacts); *Eve v. Sandoz Pharm. Corp.*, No. IP98-1429-C-Y/S, (S.D. Ind. Sept. 17, 2001), *aff'd*, 2002 WL 32153352 (S.D. Ind. 2002) (same), attached to Exhibit D. "[The plaintiff's] physicians may have information about her medical condition that is sensitive, irrelevant, and even embarrassing. However, the Court must balance the risks of disclosure of this information with that of the Defendant's right to mount its defenses for trial and to have equal access to pertinent witnesses." *Everhart*, 2003 WL 83569 at *2. "Since the plaintiffs' attorneys have unfettered, *ex parte* access to her treating physicians as they prepare for trial, it would be unfair to deny defense counsel that same access." *Eve*, attached to Ex. D, at 3.

Here, Plaintiff has waived the physician-patient privilege by placing her medical conditions at issue. She does not allege "any other medical condition" that merits continued confidentiality. Consequently, she has no right to rely on the physician-patient privilege to obstruct NCH's reasonable access to her treaters.

### B. Other Jurisdictions Permit Informal Private Interviews in Similar Cases

Courts in other jurisdictions have permitted informal private communications for similar reasons. In *Thomsen v. Mayo Foundation*, No. 4-84-1239, 1986 WL 9159 (D. Minn. Aug. 20, 1986), the court held that federal discovery rules permit *ex parte* communication with treating physicians once the patient-physician privilege has been waived. Absent such a privilege, the physician should not "be treated in any manner differently than other non-party witnesses" who

may be examined *ex parte* if they consent. *Id.* at *2. *See also Bryant v. Hilst*, 136 F.R.D. 487, 492 (D. Kan. 1991) (treating physicians are fact witnesses with non-duplicable information concerning major areas of the action, therefore both parties should have unfettered access, and informal discovery should be encouraged); *Felder v. Wyman*, 139 F.R.D. 85, 91 (D.S.C. 1991) (*ex parte* conferences between defense counsel and physician permissible in part because "nothing implicit or explicit in" Federal Rules of Civil Procedure precluded such discovery); *Huzjak v. United States*, 118 F.R.D. 61, 64 (N.D. Ohio 1987) (a party may not assert the physician/patient privilege as a means to circumvent the discovery process); *Doe v. Eli Lilly & Co.*, 99 F.R.D. 126, 128 (D.D.C. 1983) (ordering plaintiff to execute authorizations for defendant to conduct *ex parte* interviews because "no party to litigation has anything resembling a proprietary right to any witness's evidence").

Likewise, NCH should be permitted the opportunity for private, informal interviews with Plaintiff's treaters. Private interviews permit investigation and preparation of possible defense theories without revealing potential work product. *Filz v. Mayo Found.*, 136 F.R.D. 165, 169 n.7 (D. Minn. 1991). The presence of plaintiff's counsel during witness interviews causes "interference and disruption." *Id. See also Doe*, 99 F.R.D. at 128-29 (presence of plaintiff's counsel during interviews of physicians unfairly enables plaintiff "to monitor [defendant's] progress ... while his own preparation is under no such scrutiny"). Further, interviews are less burdensome and more cost-effective than depositions, including update depositions, in obtaining information from Plaintiff's treaters.

### C. HIPAA Permits a Physician to Disclose a Patient's Medical Information in Cases Such as This

The Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936, was enacted "to improve … the efficiency and effectiveness of the healthcare system, by encouraging the development of a health information system through the

establishment of standards and requirements for the electronic transmission of certain health information." § 261, 110 Stat. at 2021. In order to "ensure the integrity and confidentiality" of this transmitted health information, *id.*, § 262, 110 Stat. at 2026, the United States Department of Health and Human Services promulgated concomitant privacy regulations, including the "Privacy Rule." 67 Fed. Reg. 53182 (Aug. 14, 2002). The Privacy Rule expressly provides that a physician may disclose a patient's medical information once the patient executes a valid authorization as prescribed in the Rule. 45 C.F.R. §§ 164.502(a)(1)(iv), 164.508 (2003). Courts have held that once a patient-turned-plaintiff executes such an authorization, *ex parte* interviews between the plaintiff's treaters and defense counsel are permissible. *See, e.g., Law v. Zuckerman*, 307 F. Supp. 2d 705 (D. Md. 2004) (*ex parte* contacts allowed so long as parties comply with HIPAA procedures); *In re PPA Litig.*, 2003 WL 22203734 (N.J. Super. Ct. Law Div. 2003) (*ex parte* authorizations properly limit scope of information to medical conditions under litigation and are permissible under HIPAA).

Here, NCH is seeking disclosure of information pertinent only to the medical conditions Plaintiff put at issue, and NCH has drafted a HIPAA-compliant authorization that Plaintiff refused to sign. NCH respectfully turns to this Court to compel Plaintiff to sign a HIPAA-compliant authorization to allow *ex parte* contacts to proceed.

    **D.**     **Allowing Plaintiff's One-Sided Access to Important Witnesses to Continue Would Violate NCH's Due Process Rights**

The Due Process Clause of the United States Constitution requires fundamental fairness. *See, e.g., County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998); *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 15 (1991); *Lassiter v. Dep't of Social Servs. of Durham County*, 452 U.S.

18, 26, 33 (1981).[3] The requirement of fundamental fairness includes the provision of equal access by all parties to witnesses needed to prepare for and present their cases at trial.

In other words, "no party has a proprietary right to any witness' evidence," *King v. Ahrens*, 798 F. Supp. 1371, 1373-74 (W.D. Ark. 1992), and a party is deprived of due process when a law (or other state action) gives the opposing party favored access to evidence that results in an uneven "playing field." *Cf. Rita v. State*, 674 N.E.2d 968, 970 (Ind. 1996) ("[p]ermitting one side but not the other to question prospective witnesses in an *ex parte* format flies in the face of reciprocal discovery rights secured by the Indiana Trial Rules"); *United States v. White*, 454 F.2d 435, 438-39 (7th Cir. 1971) ("witnesses … are the property of neither the prosecution nor the defense"; defendants must have an equal right and opportunity to interview witnesses as prosecutors); *Gregory v. United States*, 369 F.2d 185, 188 (D.C. Cir. 1966) (same).

Thus, the private witness interviews that NCH is requesting are not trivial trial preparation details, but rather implicate important due process rights. As a federal appeals court has emphasized, "a party's right to interview witnesses is a valuable right." *Wharton v. Calderon*, 127 F.3d 1201, 1204 (9th Cir. 1997). A trial is "a quest for truth," and "[t]hat quest will more often be successful *if both sides have an equal opportunity* to interview the persons who have the information from which the truth may be determined." *IBM Corp. v. Edelstein*, 526 F.2d 37, 44 (2d Cir. 1975) (emphasis added) (internal citation omitted).

Witness interviews constitute the quintessential attorney work product that courts have held to be protected from disclosure to opposing counsel, to ensure that attorneys can represent their clients effectively within the adversarial process and gather information freely in preparing their cases for trial. *See*, *e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 511 (1947) (work product of

---

[3] The Due Process Clause of the Indiana Constitution also requires fundamental fairness. *Sanchez v. State*, 749 N.E.2d 509, 515 (Ind. 2001) (recognizing right to due process under Indiana and United States constitutions).

lawyers consists, *inter alia*, of witness interviews; opening interview memoranda and other work product to opposing counsel's scrutiny would lead to "the interests of the clients and the cause of justice . . . be[ing] poorly served"); *In re Grand Jury Subpoena Dated November 8, 1979*, 622 F.2d 933, 935-36 (6th Cir. 1980) (attorney work product privilege creates zone of privacy in which attorney can investigate and prepare case; identity of whom counsel chose to interview and memoranda of interviews protected work product); *see also IBM*, 526 F.2d at 42, 44 (issuing writ of mandamus to permit defendant in civil suit to conduct private witness interviews; holding that order barring such interviews "unduly infringed upon counsels' ability to prepare their case for trial").

Plaintiff currently has unilateral free rein to engage in these important trial preparation tasks through *ex parte* witness interviews. Moreover, only Plaintiff can learn exactly what a treating physician would say at trial in response to particular questions or theories yet to be disclosed by experts. This is vital information that allows Plaintiff to decide whether to call the witness and which issues to address – or avoid – during direct testimony. This information also would materially assist Plaintiff in deciding how best to cross-examine a treating physician, in case she decides not to call the witness and NCH does call the witness to bolster its defense. NCH merely seeks equal rights and protections.

NCH's concerns in this regard are not merely hypothetical. Plaintiff has already blocked NCH's attempts to even depose or obtain the records of one of Plaintiff's treaters, Dr. Kraft, on the ground that this treater will be named as an expert for Plaintiff. Given that no deposition has yet taken place, Plaintiff's counsel is obviously working with that treating physician on an *ex parte* basis to learn his opinions and prepare his Rule 26(a)(2) report. Unless NCH's motion is granted, it will have absolutely no ability to have similar informal conversations with Plaintiff's

treaters, to properly evaluate whether any of these physicians are appropriate expert witnesses, or to speak with them about the preparation of Rule 26(a)(2) expert reports if they are.

Denial of NCH's motion would violate NCH's due process rights by materially burdening its fundamental right to a fair trial. NCH should be given equal access to these potential trial witnesses, and Plaintiff should be compelled to sign an authorization permitting NCH to privately interview Plaintiff's healthcare providers.[4]

### E. This Rationale is Especially Apt in this Case Where NCH Requires Informal Private Interviews With Plaintiff's Healthcare Providers for Effective Trial Preparation

This complex, products liability action involves claims that NCH's product, Tavist-D, allegedly caused the rupture of Plaintiff's brain aneurysm resulting in a subarachnoid hemorrhage and residual injuries. *See generally* Plaintiff's Complaint and Fact Sheet. Strokes, and even aneurysmal strokes, are common in the general population. The central focus of the case, therefore, is medical causation.

Plaintiff has received treatment or consultation from more than 26 individuals. Many of these treaters likely have relevant opinion testimony and could serve as experts. There is no way for NCH to make that determination based on the extremely limited contacts NCH has had to date with Plaintiff's treating physicians. Indeed, given the limitations on the number of fact depositions in the MDL, NCH has been unable to meet or speak at all with many of these physicians. NCH was limited in the MDL to taking the deposition of only ten of Plaintiff's treaters for no more than four hours per deposition.[5] Plaintiff's counsel, on the other hand, have

---

[4] To the extent the Court denies NCH the right to *ex parte* contacts, NCH requests that Plaintiff's counsel be similarly prohibited from offering a treater as an expert and from any further *ex parte* contacts with Plaintiff's treaters.

[5] NCH also deposed three non-treater fact witnesses: Plaintiff, Plaintiff's father, and Plaintiff's friend and roommate at the time of the event, Lynn Shanks.

unfettered access to these physicians and, as discussed above, have already used that access to Plaintiff's advantage.

Moreover, NCH's depositions were completed more than fifteen months ago, and several important and highly relevant scientific papers have become available in that time. Additional scientific studies relevant to the issues in this litigation will undoubtedly emerge prior to the trial of this case. NCH, however, cannot speak with any treaters to determine whether, in light of these developments, they might now be able to serve as experts for NCH. Nor can NCH discuss theories to be articulated in the parties' expert reports with Plaintiff's treaters. Similarly, NCH should be permitted to talk with deposed treaters to determine whether their likely trial testimony will be consistent with their depositions, which will be 27 months in the past by trial time.[6]

Plaintiff has unlimited opportunities to contact Plaintiff's treaters and evaluate whether and how to use their testimony to support her case. To effectively prepare for trial, NCH should have the same access as Plaintiff.

**CONCLUSION**

Plaintiff should not be permitted to surprise NCH with testimony from the six witnesses disclosed in its Rule 26(a)(1) submission. Accordingly, NCH respectfully requests that the Court permit NCH to depose the fact witnesses identified in Plaintiff's Rule 26(a)(1) Disclosures, or, in the alternative, that the Court preclude Plaintiff from introducing any evidence from these witnesses in pre-trial proceedings or at trial.

In addition, Plaintiff's unfettered unilateral access to the healthcare providers in this case unjustly hinders NCH's preparation of its defense. NCH therefore respectfully requests that the Court compel Plaintiff to sign the attached HIPAA-compliant authorization allowing counsel for

---

[6] The ability to speak with treaters informally about these topics may obviate the need for update depositions or additional depositions.

NCH to conduct such interviews, or, in the alternative, that the Court prohibit Plaintiff's counsel from offering a treater as an expert and from any further *ex parte* contacts with Plaintiff's treaters.

Respectfully submitted,

*/s/ Sally Franklin Zweig*

Sally Franklin Zweig
Kristopher N. Kazmierczak
Katz & Korin, P.C.
The Emelie Building
334 North Senate Avenue
Indianapolis, IN 46204-1708

Katharine R. Latimer
Cynthia L. Kendrick
Traci M. Vanek
Spriggs & Hollingsworth
1350 I Street, N.W., Ninth Floor
Washington, DC 20005

Randolph S. Sherman
Lori Leskin
Kaye Scholer, LLP
425 Park Avenue
New York, NY 10022-3595

**CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of October, 2004, a copy of the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANT NOVARTIS CONSUMER HEALTH, INC.'S MOTIONS: (1) FOR DISCOVERY RELATED TO PLAINTIFF'S RULE 26(A)(1) DISCLOSURES; AND (2) TO COMPEL PLAINTIFF TO SIGN AUTHORIZATION ALLOWING INFORMAL PRIVATE INTERVIEWS WITH HER HEALTHCARE PROVIDERS** was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's ECF. Parties may access this filing through the Court's system:

| | |
|---|---|
| H. Bissell Carey, II (Pltf)<br>Robinson & Cole, LLP | tcarey@rc.com |
| Kristopher Kazmierczak (Novartis)<br>Katz & Korin, PC | kkaz@katzkorin.com |
| Paula S. Bliss (Pltf)<br>Robinson & Cole, LLP | pbliss@rc.com |
| Sally Zweig (Novartis)<br>Katz & Korin, P.C. | szweig@katzkorin.com |
| Traci Vanek (Novartis)<br>Spriggs & Hollngsworth | tvanek@spriggs.com |

I hereby certify that on the 18th day of October, 2004, a copy of the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANT NOVARTIS CONSUMER HEALTH, INC.'S MOTIONS: (1) FOR DISCOVERY RELATED TO PLAINTIFF'S RULE 26(A)(1) DISCLOSURES; AND (2) TO COMPEL PLAINTIFF TO SIGN AUTHORIZATION ALLOWING INFORMAL PRIVATE INTERVIEWS WITH HER HEALTHCARE PROVIDERS** was mailed, by first-class U.S. Mail, postage pre-paid and properly addressed to the following:

| | |
|---|---|
| Steven B. Rotman<br>James D. Gotz<br>Robinson & Cole, LLP<br>One Boston Place<br>Boston, MA 02108-4404 | Gregory J. Bubalo, Esq.<br>Becker Law Office, PLLC<br>800 Brown & Williamson Tower<br>Louisville, KY 40202 |
| *Counsel for Plaintiff, Tracy Patton* | *Counsel for Plaintiff, Tracy Patton* |

Sally Franklin Zweig

Katz & Korin, P.C.
The Emelie Building
334 North Senate Avenue
Indianapolis, IN 46204-1708
317/464-1100; 317/464-1111 Fax